UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

SEBASTIAN PORTILLO and SECUNDINO
MORÁN,

                              Plaintiffs,

                -against-

COLEMAN PLAN A GROUP LLC D/B/A
MONROE, KIKI'S PLAN A GROUP LLC D/B/A
KIKI'S, and PAVLOS SIERROS A/K/A PAUL
SIERROS,

                              Defendants.

------------------------------------------------------------------ X

**COMPLAINT**

Plaintiffs Sebastian Portillo and Secundino Morán ("Plaintiffs"), by their attorneys, Pechman Law Group PLLC, complaining of Defendants Coleman Plan A Group LLC d/b/a Monroe, Kiki's Plan A Group LLC d/b/a Kiki's, and Pavlos "Paul" Sierros (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.     Plaintiffs worked for Defendants as dishwashers and preparation cooks.

2.     Throughout Plaintiffs' employment, Defendants paid Plaintiffs a fixed rate for all hours worked, including those worked over forty in a workweek, and thus failed to pay them overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 190, 650 *et seq.* ("NYLL").

3.     Defendants also failed to pay Plaintiffs spread-of-hours pay and to timely provide them with wage notices and wage statements, in violation of the NYLL and the New York Wage Theft Prevention Act ("WTPA").

4.      After Plaintiff Portillo complained about Defendants' failure to adequately compensate him, Defendants reduced the hours of and terminated his cousin, Plaintiff Morán, in violation of the FLSA and the NYLL.

5.      Plaintiffs bring this action to recover unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages, compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs pursuant to the FLSA, NYLL, and WTPA.

## JURISDICTION

6.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because all events giving rise to this action and alleged herein occurred at either Monroe or Kiki's, which are located, and operated by Defendants, in the Southern District of New York.

8.      Pursuant to NYLL § 215(2)(b), upon the filing of this Complaint, Plaintiffs will serve a copy of the Complaint on the New York State Office of the Attorney General.

## THE PARTIES

**Plaintiffs**

9.      Sebastian Portillo ("Portillo") resides in the Bronx, New York.

10.     Defendants employed Portillo initially as a dishwasher at Kiki's from approximately June 2016 to February 2017, and at Monroe from approximately March 2017 to June 2018.

11.     Secundino Morán ("Morán") resides in the Bronx, New York.

12.     Defendants employed Morán as a dishwasher at Monroe from approximately November 2017 to July 15, 2018.

**Corporate Defendants**

13.     Defendant Coleman Plan A Group LLC is a New York limited liability company that owns, operates, and does business as Monroe, a restaurant located at 49 Monroe Street, New York, New York 10002.

14.     During Plaintiffs' employment, Monroe had employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

15.     In the three years prior to the filing of the Complaint, Monroe's had an annual gross volume of sales in excess of $500,000.

16.     During Plaintiffs' employment, Monroe's was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

17.     Kiki's Plan A Group LLC is a New York limited liability company that owns, operates, and does business as Kiki's, a restaurant located at 130 Division Street, New York, New York 10002.

18.     Kiki's has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods

3

or materials that have been moved in or produced for interstate commerce by any person.

19.     In the three years prior to the filing of the Complaint, Kiki's had an annual gross volume of sales in excess of $500,000.

20.     During Plaintiffs' employment, Kiki's was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant Pavlos Sierros**

21.     Pavlos "Paul" Sierros ("Sierros") is an owner and manager of the corporate defendants, Monroe and Kiki's (the "Corporate Defendants").

22.     Throughout Plaintiffs' employment, Sierros had and exercised the authority to hire and fire employees, direct the manner in which employees performed their daily duties and assignments, and establish and implement the pay practices and work and scheduling policies at Monroe and Kiki's.

23.     For example, Sierros hired Plaintiffs' managers at Kiki's and Monroe, Manuel, Miguel, Paul Stavros, Jose Luis (known as "El Negro"), and another manager known as "El Muerto."

24.     Sierros determined Plaintiffs' pay rates and addressed Plaintiffs' complaints and requests regarding wage payments.  For instance, Portillo complained to Sierros that his wage payments were not made at the same time but piecemeal throughout the week.

25.     Sierros made the decision to terminate both Plaintiffs from Defendants' restaurants.

26.     Throughout Plaintiffs' employment, Sierros was regularly present at both Monroe and Kiki's.

4

27.     Sierros was Plaintiffs' "employer" within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

28.     Located in the Two Bridges neighborhood in lower Manhattan, Monroe and Kiki's are casual restaurants that serve Mediterranean fare.

29.     Kiki's operates seven days a week, from approximately noon to between midnight and 1:00 a.m.

30.     After opening in early 2017, Monroe was initially open Monday to Sunday for dinner only, from approximately 5:00 p.m. to between midnight and 1:00 a.m. About two months after opening, Monroe began offering brunch and lunch, starting at 12:00 p.m.

**Portillo's Hours and Pay**

31.     From approximately June 2016 through February 2017, Portillo worked a regular schedule of six days per week and approximately sixty-eight or seventy-four hours per week: Tuesday to Friday from 5:00 p.m. to 1:00 a.m. or 2:30 a.m., and Saturday and Sunday from approximately 8:00 a.m. to 2:00 a.m.

32.     Although Kiki's closed between approximately midnight and 1:00 a.m., Sierros and the kitchen manager required Portillo to stay after the kitchen closed to wash all cutlery, dishes, and glasses.

33.     From approximately March 2017 to July 2017, Portillo worked at Monroe as a dishwasher and occasionally manned the fryer and was required to clean the kitchen after it closed.  He worked a regular schedule of Monday to Wednesday and Friday to Sunday from approximately 2:00 p.m. to between 12:00 a.m. and 1:00 a.m., totaling between sixty and sixty-six hours per week.

5

34.     From approximately August 2017 to the end of his employment in mid-June 2018, Portillo worked as a preparation cook in Monroe's kitchen Tuesday to Sunday, from approximately 7:00 a.m. to between 4:00 p.m. and 5:00 p.m., totaling fifty-four to sixty hours per week.

35.     Kiki's and Sierros paid Portillo in cash at $10.00 per hour, including hours he worked in excess of forty per workweek.  For all hours worked per week at Monroe, Portillo received $10.00 per hour throughout March 2017; $10.50 per hour from April to June 2017; $11.00 per hour from August to October 2017; and $12.00 per hour from in or around October 2017 through June 2018 for all hours worked.

36.     Throughout his employment, Portillo took approximately five sick days.

37.     Defendants failed to pay Portillo the lawful minimum wage rate of $11.00 per hour in 2017 and $13.00 per hour in 2018.

38.     Despite regularly working more than forty hours per workweek, Defendants did not properly compensate Portillo at one and one-half (1½) times his hourly rate.

39.     Defendants did not compensate Portillo with one hour's pay at the basic minimum hourly wage rate for each day his shift spread over more than ten hours.

40.     Defendants paid Portillo his wages weekly without accompanying wage statements.

41.     Defendants did not furnish Portillo with a wage notice at the time of his hiring or whenever there was a change in his wage rate.

**Morán's Hours and Pay**

42.     From approximately November 2017 to July 15, 2018, Morán worked at Monroe as a dishwasher.

6

43.     Morán worked a regular schedule of Wednesday to Monday per week from approximately 2:00 p.m. to 1:00 a.m. at Monroe, totaling sixty-six hours per workweek.

44.     Morán was paid a straight-time rate of $10.00 per hour until approximately May 2018, when Sierros increased his rate to $11.00 per hour.

45.     Defendants also failed to pay Morán the lawful minimum wage rate of $11.00 per hour in 2017 and $13.00 per hour in 2018.

46.     Defendants did not pay Morán at the rate of one and one-half times his hourly wage rate for hours worked in excess of forty per workweek.

47.     Defendants did not compensate Morán with one hour's pay at the basic minimum hourly wage rate for each day his shift spread over more than ten hours.

48.     Defendants paid Morán his wages weekly without accompanying wage statements.

49.     Defendants did not furnish Morán with a wage notice at the time of his hiring or whenever there was a change in his wage rate.

**Defendants' Retaliatory Acts Against Plaintiffs**

50.     On July 9, 2018, Portillo, through counsel, mailed Sierros a demand letter outlining his wage claims under the FLSA and the NYLL.

51.     After Sierros learned about Portillo's claims, Sierros and Morán's direct supervisor, nicknamed "El Negro," retaliated against Portillo and Morán, Portillo's cousin, by cutting Morán's hours, to 5:00 p.m. to 1:00 a.m. six days per week, and giving him more work to do in less time.  Morán also learned that El Negro had told the other Monroe dishwasher to purposefully leave work for Morán.

7

52.     On July 15, 2018, El Negro terminated Morán's employment, explaining at that time that he and Sierros had originally reduced his hours because of Portillo's complaint.  As Morán was exiting the premises, Sierros grabbed his backpack, opened it, retrieved Morán's phone and threw his phone on the ground, apparently concerned that Morán had photographed evidence of his and Portillo's pay and hours with the phone and intended to use such evidence to support wage theft claims.   Sierros then threatened to call the police.  Frightened, Morán ran away without his phone or pay.

53.     Defendants have not paid Morán any wages for his last week of work, approximately 32 hours of work.

54.     Defendants terminated Morán's employment and threatened him in retaliation for Plaintiff Portillo's complaint that Defendants had violated the FLSA and the NYLL, to discourage both Portillo and Morán from pursuing their wage claims against Defendants.

## FIRST CLAIM
### (New York Labor Law – Unpaid Minimum Wages)

55.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

56.     Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor ("NYDOL") Regulations, and employed Plaintiffs.

57.     Defendants failed to pay Plaintiffs the minimum wages to which they are entitled under the NYLL.

58.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the Plaintiffs minimum hourly wages.

8

59.     As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

## SECOND CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

60.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

61.     Defendants are employers within the meaning of the FLSA.

62.     Throughout their employment, Plaintiffs were engaged in interstate commerce or in the production of goods for interstate commerce on behalf of Defendants.

63.     Plaintiffs are non-exempt "employees" within the meaning of the FLSA.

64.     Defendants were required to pay Plaintiffs one and one-half (1½) times each of their regular hourly wage rates for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207 *et seq.*

65.     Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

66.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

67.     Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## THIRD CLAIM
### (New York Labor Law – Unpaid Overtime)

68.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth

herein.

69.     Plaintiffs are non-exempt "employees" within the meaning of the NYLL.

70.     Under NYDOL Regulations, including 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiffs one and one half (1½) times their respective regular hourly wage rates for all hours that Plaintiffs worked in excess of forty per workweek.

71.     Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL and its supporting regulations.

72.     Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiffs overtime wages.

73.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### FOURTH CLAIM
### (FLSA – Retaliation)

74.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

75.     Defendants are employers within the meaning of 29 U.S.C. § 201, *et seq.*

76.     Portillo engaged in protected activity by complaining to Defendants of Defendants' failure to compensate all legally required minimum and overtime wages.

77.     Upon information and belief, Defendants also believed that Morán had complained about Defendants' underpayment of wages and/or would support Portillo's claims.

78.     In retaliation for Plaintiff Portillo's complaint and Morán's suspected complaint and involvement, Defendants reduced the work hours and eventually

discharged Morán in order to discourage both Plaintiffs from pursuing their claims under the FLSA.

79.     Defendants' retaliatory acts violated 29 U.S.C. § 215(a)(3) of the FLSA.

80.     For Defendants' unlawful retaliatory acts, Plaintiffs are entitled to recover from Defendants compensatory damages, liquidated damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216.

## FIFTH CLAIM
### (NYLL – Retaliation)

81.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

82.     Defendants are employers within the meaning of the NYLL § 190 *et seq.*, 651(5), and 652, and supporting NYDOL Regulations, including, but not limited to, 12 N.Y.C.R.R. Part 146.

83.     Portillo engaged in protected activity by complaining to Defendants of Defendants' failure to compensate all legally required minimum and overtime wages.

84.     Upon information and belief, Defendants also believed that Morán had complained about Defendants' underpayment of wages and/or would support Portillo's claims.

85.     In retaliation for Plaintiff Portillo's complaint and Morán's suspected complaint and involvement, Defendants initially reduced the work hours and later discharged Morán in order to discourage both Plaintiffs from pursuing their claims under the NYLL.

86.     For Defendants' unlawful retaliatory acts, Plaintiffs are entitled to recover from Defendants compensatory damages, liquidated damages, punitive damages, and reasonable attorneys' fees and costs pursuant to NYLL § 215(2).

11

**SIXTH CLAIM**
**(New York Labor Law – Spread-of-Hours Pay)**

87.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

88.     Defendants willfully failed to pay Plaintiffs additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Plaintiffs' shifts spread over more than ten hours.

89.     By Defendants' failure to pay Plaintiffs spread-of-hours pay, Defendants willfully violated Section 650 *et seq.*, of the NYLL and violated the supporting NYDOL regulations, including, but not limited to, 12 N.Y.C.R.R. § 146-1.6.

90.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

**SEVENTH CLAIM**
**(New York WTPA – Failure to Provide Wage Notices)**

91.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

92.     The WTPA, as incorporated into the NYLL, as well as the NYLL's interpretative regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide each employee with a written notice of wage rates, in the employee's native language, at the time of hire and whenever there is a change to an employee's rate of pay.

93.     In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs, at the time of hiring and whenever there was a change to rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift,

day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the

minimum wage, including tip, meal, or lodging allowances; the regular pay day

designated by the employer in accordance with NYLL § 195(1); the name of the

employer; any "doing business as" names used by the employer; the physical address

of the employer's main office or principal place of business, and a mailing address if

different; the telephone number of the employer, and anything otherwise required by

law.

94.     Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to

recover from Defendants liquidated damages, reasonable attorneys' fees, and costs and

disbursements of the action, pursuant to the NYLL § 198(1-b).

## EIGHTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)

95.     Plaintiffs repeat and reallege all foregoing paragraphs as if set forth

herein.

96.     The NYLL and WTPA require employers to provide employees with an

accurate wage statement each time they are paid.

97.     Throughout Plaintiffs' employment with Defendants, Defendants paid

Plaintiffs without providing a wage statement at the end of every pay period accurately

listing, *inter alia*:  the regular and overtime rate or rates of pay; the number of regular

and overtime hours worked per pay period; gross wages; deductions; allowances, if

any, claimed as part of the minimum wage; and net wages, in violation of the NYLL

§ 195(3).

98.     Due to Defendants' violation of NYLL § 195(3), Plaintiffs are entitled to

recover from Defendants liquidated damages, reasonable attorneys' fees, and costs and

disbursements of the action, pursuant to the NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

        a.      declaring that Defendants have violated the minimum and overtime wage provisions of the FLSA, NYLL, and NYDOL regulations;

        b.      declaring that Defendants retaliated against Plaintiffs in violation of the FLSA and NYLL;

        c.      declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL and NYDOL regulations;

        d.      declaring that Defendants violated the notice and record-keeping provisions of the NYLL and WTPA;

        e.      declaring that Defendants willfully violated the FLSA and NYLL;

        f.      enjoining future violations of the FLSA and NYLL by Defendants;

        g.      awarding Plaintiffs damages for unpaid minimum and overtime wages;

        h.      awarding Plaintiffs compensatory, liquidated, and punitive damages for Defendants' retaliatory acts;

        i.      awarding Plaintiffs damages for unpaid spread-of-hours wages;

        j.      awarding Plaintiffs liquidated damages in an amount equal to the total amount of the wages found to be due pursuant to the FLSA and the NYLL;

        k.      awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish Plaintiffs with accurate wage statements pursuant to the NYLL and the WTPA;

        l.      awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish Plaintiffs with wage notices pursuant to the NYLL and the WTPA;

   m. awarding Plaintiffs pre- and post-judgment interest under the
NYLL and 28 U.S.C. § 1961;

   n. awarding Plaintiffs reasonable attorneys' fees and costs pursuant to
the FLSA and the NYLL; and

   o. awarding such other and further relief as the Court deems just and
proper.

Dated: New York, New York
   April 25, 2019

          PECHMAN LAW GROUP PLLC

          By:

           Louis Pechman
           Lillian M. Marquez
           488 Madison Avenue, 17th Floor
           New York, New York 10022
           Tel.: (212) 583-9500
           pechman@pechmanlaw.com
           marquez@pechmanlaw.com
           *Attorneys for Plaintiffs*