# PECHMAN LAW GROUP PLLC

### A T T O R N E Y S   A T   L A W

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

January 14, 2020

**VIA ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

        Re:   *Portillo et ano. v. Coleman Plan A Grp. LLC et al.*
              19 Civ. 3738 (JMF)(SDA)

Dear Judge Furman:

        We represent Plaintiffs Sebastian Portillo and Secundino Morán in the above-captioned matter.  We write jointly with counsel for Kiki's Plan A Group LLC d/b/a Kiki's ("Kiki's"), Coleman Plan A Group LLC d/b/a Monroe ("Monroe"), and Pavlos Sierros ("Sierros") (collectively, the Defendants) to request that the Court approve the attached negotiated Settlement Agreement and Release ("Settlement Agreement") (Exhibit A) as a fair and reasonable compromise of this matter.[1]

## PROCEDURAL HISTORY AND PLAINTIFFS' ALLEGATIONS

        Plaintiffs Sebastian Portillo and Secundino Morán worked for the Defendants at two restaurants located in the Two Bridges neighborhood in lower Manhattan: Kiki's and Monroe.  Kiki's is a casual restaurant that serves Mediterranean fare.  Monroe operated just blocks away but closed shortly before service of the Complaint in this matter.  Portillo worked at both Kiki's and Monroe, while Moran worked solely at Monroe.  Pavlos "Paul" Sierros owned and managed both restaurants when Plaintiffs worked there between 2016 and when Sierros terminated their employment in 2019. For their work as dishwashers and food preparers, Plaintiffs allege that they were paid straight-time wages that fell below the applicable statutory minimum wage rate.

---

[1] Note that Defendants' signatures on the Agreement are not notarized, but Defendants have assured Plaintiffs that they will provide notarized copies of the signature pages and to the confession of judgment in the upcoming days.

Hon. Jesse M. Furman
January 14, 2020
Page 2

Prior to filing their Complaint in Court, on July 9, 2018, Sebastian Portillo, through counsel Pechman Law Group PLLC ("PLG"), mailed a demand letter to Defendants, outlining his claims for minimum and overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190, 650 *et seq.* Soon after receipt of the demand letter, Plaintiffs allege that Defendants terminated Secundino Moran, a relative of Portillo and a then current employee of Monroe, in retaliation for Portillo's demand to recover unpaid wages. Upon receipt of the demand letter, the parties engaged in pre-litigation settlement discussions, including in-person meetings, with counsel Robert Wolf, to resolve Portillo and Moran's claims. During prelitigation negotiations, plaintiffs learned that Defendants shut down Monroe in February 2019, and that Sierros sold Kiki's.

Despite more than six months of discussions, the parties were unable to reach a resolution of Plaintiffs' claims and Plaintiffs commenced this action on April 26, 2019 by filing a Complaint against Defendants in the Southern District of New York, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law, §§ 650 *et seq.* ("NYLL"). (*See generally* Dkt. No. 1). On April 29, 2019, the matter was referred to Magistrate Judge Steward D. Aaron for settlement purposes. (Dkt. No. 10). Defendant Sierros filed his Answer to the Complaint on August 21, 2019 denying all material allegations (Dkt. No. 26), and Kiki's and Monroe defaulted.

Sierros and Plaintiffs participated in an unsuccessful settlement conference on August 27, 2019 before Judge Stewart D. Aaron. At the conference, Judge Aaron ordered Defendant Sierros to produce to Plaintiffs wage-related documents and personal financial information by September 10, 2019. The Parties participated in an initial conference with Your Honor on September 5, 2019. At the initial conference, Plaintiffs informed the Court that they intended to pursue successor claims against the individuals and entities that purchased Kiki's from Sierros.

Following the initial conference, Defendants produced Sierros' personal income tax returns and payroll records for Plaintiff Portillo. On September 26, 2019, Plaintiffs' served their First Set of Document Requests and Interrogatories on Defendants, as well as a deposition notice for Sierros, and a third-party subpoena to Derek Tighe, the new owner of Kiki's. Defendants served their demands for documents and interrogatory requests on October 7, 2019. Thereafter, Defendants Monroe and Kiki's filed their Answers on October 9, 2019 (Dkt. No. 44).

The parties then engaged in several rounds of negotiations and were ultimately able to reach a settlement that is memorialized in the enclosed Settlement Agreement and Release. The Parties exchanged and reviewed several versions of the Agreement and negotiated several of its terms vigorously, including the length of the payout, and the amount of the down payment. PLG also met with the Plaintiffs to review all terms of the Agreement, including each Plaintiff's distribution of the settlement payment, which Plaintiffs accepted.

Hon. Jesse M. Furman
January 14, 2020
Page 3

Pursuant to the Court's Order dated December 26, 2019, ECF No. 46, the Parties submit this letter motion requesting that the Court approve the settlement and dismiss the action with prejudice, but retain jurisdiction over this matter for purposes of enforcing the Agreement, if necessary.

## PLAINTIFFS' LEGAL CLAIMS

### I.      Wage Payment Violations

Plaintiffs allege that although they regularly worked more than forty hours per workweek, Defendants did not properly compensate them at one and one-half (1½) times their hourly rate. *See* 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4. Plaintiffs also allege that they are entitled to spread of hours pay—an additional hour's pay at the basic minimum wage rate—for each day in which their shift exceeded ten hours, 12 N.Y.C.R.R. § 142-2.4, as well as accurate wage statements, and wage notices containing, *inter alia*, their rate or rates of pay and basis thereof.

### II.     Retaliation Claims Under the FLSA and the NYLL

Plaintiffs' allege that Defendants terminated Morán's employment and threatened him in retaliation for Plaintiff Portillo's complaint that Defendants had violated the FLSA and the NYLL and to discourage both Portillo and Morán from pursuing their wage claims against Defendants. Plaintiffs' position is that an attorney demand letter like Mr. Portillo's, which explicitly raises claims under the FLSA or the NYLL, is a "complaint" and, thus, protected activity, triggering the protections of those laws' anti-retaliation provisions. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 15 (2011) (interpreting the requirement to "file" a complaint as simply putting the employer "on notice that [the] employee is asserting statutory rights under the [Act]."). Further, Plaintiffs intended to establish that Sierros believed that Morán had complained to an attorney and Mr. Portillo about his underpayment of wages. This belief is enough to extend Section 215's protections to Morán. In addition, Morán falls within the ambit of the laws' anti-retaliation provisions because, as Portillo's relative, he was targeted and terminated by Defendants because of Portillo's wage complaint in an effort to dissuade him and Mr. Portillo from pursuing wage claims. Therefore, Plaintiffs alleged that both Plaintiffs can challenge such retaliation. *Thompson*, 562 U.S. at 179. Accordingly, Plaintiffs alleged unlawful retaliation under the FLSA and NYLL anti-retaliation provision. 29 U.S.C. § 215(a)(3), N.Y. Lab. Law § 215(1)(a). Defendants deny Plaintiffs' allegations, including but not limited to Plaintiffs' wage payment violation allegations and their allegations of retaliation, under the FLSA and NYLL.

3

Hon. Jesse M. Furman
January 14, 2020
Page 4

## ARGUMENT

### THE COURT SHOULD APPROVE THE SETTLEMENT OF PLAINTIFFS' FLSA CLAIMS AS FAIR AND REASONABLE AND DISMISS THE ACTION WITH PREJUDICE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200; *see also* ECF No. 46 ("Any settlement—including any proposed attorneys' fee award—must be scrutinized by the Court to ensure that it is fair"). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Bae Cleaners Inc.*, No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The Parties believe the settlement here is fair and reasonable under these factors.

## I.    Terms of Settlement

The Parties agreed to settle this matter for $75,000.00 (the "Settlement Amount"). As set forth below, the Agreement is a fair and reasonable compromise as it resolves bona fide disputes over sharply contested issues and provides substantial relief to Plaintiffs. Of that amount, $25,406.06 is payable to Plaintiffs' counsel (including $609.09 in expense reimbursements and $24,796.97 in attorneys' fees). The remaining $49,593.94 is payable directly to Plaintiffs.

The Agreement provides that Defendants shall make an initial payment of $15,000 by January 15, 2020, and the balance of $60,000 to be paid in ten equal consecutive monthly installment payments. Neither Plaintiff will receive a service award.

Hon. Jesse M. Furman
January 14, 2020
Page 5

The Agreement's terms are consistent with *Cheeks*. For example, the Agreement contains a limited release to wage and hour claims. *Id*. § 6. There is no confidentiality provision. The agreement includes a mutual non-disparagement provision. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision). Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation.

As a fair and reasonable settlement that was negotiated at arm's length, the Agreement contains provisions that help to ensure that Defendants pay the Settlement Amount. Namely, as part of the settlement, the Parties jointly requested the Court retain jurisdiction over this matter for purposes of enforcing the Agreement's terms in the event of such default, *Id.* § 3(b), and Defendant Sierros agreed to sign Confessions of Judgment for an amount 150% of the Settlement Amount to be entered upon default of any of the settlement payments,

## II.    Plaintiffs' Litigation Risks

Throughout this litigation, the parties have held significantly different viewpoints of the underlying facts of this matter and Defendants' potential liability. Fundamentally, the parties dispute the number of hours that Plaintiffs worked and the consistency of Defendants' pay practices across the two restaurants.

Although it is Plaintiffs' position that they have viable claims, Plaintiffs recognize that they did not maintain contemporaneous records, and will have to establish their claims solely through their testimony. Defendants allege that Plaintiffs were paid all their wages, and the few records produced for Plaintiff Portillo reflect that he was paid at $11.00 per hour, and received overtime pay of $16.50 per overtime hour. Indeed, such records could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' records in their entirety. Moreover, Defendants allege that the reason for Plaintiff Moran's termination was not retaliatory but due to his job performance.   Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after trial. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiffs' FLSA claims, but also their pendent state law claims.

Proceeding with the litigation would consume significant amounts of time and resources, almost certainly including most, if not all, of the settlement amount.

Hon. Jesse M. Furman
January 14, 2020
Page 6

Defendants also alleged that Sierros is in a precarious financial condition and produced his personal income taxes to support their position. Accordingly, proceeding with the litigation would consume significant amounts of time and resources, almost certainly including most, if not all, of the settlement amount. By settling, the Parties are choosing to cut their losses to ensure an outcome that they can both accept and control. *See, e.g.,* *Cortes v. New Creators, Inc.,* No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("In light of defendants' precarious financial condition . . . there is a substantial risk that any judgment plaintiff[] might obtain at trial would prove uncollectable."); *Meza v. 317 Amsterdam Corp.,* No. 14 Civ. 9007 (VSB), 2015 WL 9161791, at *1 (S.D.N.Y. Dec. 14, 2015) (approving settlement where amount paid was approximately 16% of plaintiffs' highest potential recovery but defendant faced significant financial difficulties); *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable."). Particularly in view of Defendants' financial difficulties, the Settlement Amount represents a fair and reasonable compromise of Plaintiffs' claims.

## II.     Possible Range of Recovery and Distributions

Plaintiffs computed a damages analysis relying on Plaintiffs' best estimates of the hours worked. Plaintiffs' damages analysis resulted in a total damage amount of approximately $235,000, including "actual" damages and any damages owed for wage notice and wage statement violations, liquidated damages under the NYLL and statutory interest on the NYLL claims at 9% per annum, as well as damages for their retaliation claims. Specifically, Plaintiffs' analysis is that they are owed $28,073.50 in unpaid wages, liquidated damages in the same amount, statutory damages under the Wage Theft Prevention Act, which total $10,000, $4,773.43 in interest to date, and approximately $11,200 in backpay damages to Plaintiff Moran based on his retaliation claim totaling, $81,900 in wage-related damages. Plaintiffs also demanded emotional distress damages of $40,000 and punitive damages of $25,000 for Portillo and emotional distress damages of $50,000 and punitive damages of $25,000 to Moran.

The Settlement Amount (*i.e.,* $75,000.00) represents full compensation of the "actual" unpaid wages and liquidated damages calculated from Plaintiffs' analysis, which would be the anticipated recovery if Plaintiffs had received a favorable outcome at trial for their FLSA and NYLL wage claims. While it does not compensate Plaintiffs for all of their retaliation emotional distress damages, penalties, interest, and attorneys' fees in addition to the damages, the parties believe that this is a fair and reasonable recovery based on the risks associated with proceeding to trial.

## III.    Avoidance of Litigation Burdens and Expenses

A significant factor in settlement negotiations was the avoidance of litigation burdens and expenses, particularly in this case, where a significant amount of discovery, including party and third-party depositions would need to be completed. Plaintiffs would likely seek to include the successor entities as Defendants in this litigation.

Hon. Jesse M. Furman
January 14, 2020
Page 7

Defendants or Plaintiffs may also file summary judgment motions. If no summary judgment motions were successful, which is likely considering the many factual disputes in the litigation, the case would be tried on an individual basis before the Court without a jury. In light of the fact-intensive nature of the issues in dispute, further litigation would result in both sides incurring significant legal fees that would likely exceed the Settlement Amount.

**IV.    Arms' Length Negotiations, Absence of Collusion**

The Parties' attorneys are competent and experienced in wage and hour matters. Counsel engaged in arm's length and vigorous negotiations on behalf of the Parties. The Parties' vigorous negotiations confirm that there was no collusion or fraud and that the settlement amount is the product of fair and reasonable negotiations.

**V.    Attorneys' Fees**

PLG's fees do not impede settlement approval. Pursuant to the contingency fee retainer agreements between Plaintiffs and PLG, PLG's fees and costs total $24,796.97, which equals 33.3% of the Settlement Amount, plus reimbursements of $609.09 in costs reasonably incurred in the prosecution of this action. *See Alonso v. LE Bilboquet NY, LLC*, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (approving one-third contingency attorney fee award where, it is "consistent with a commonly approved percentage" and "is based on an agreement between Plaintiff and counsel."); *see In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). "A contingency fee is presumptively valid where 'the proposed fee amount is exactly one-third of the net settlement amount,'" as it is in this case. *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334 (RA), 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) (quoting *Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15-CV-2950 (RA), 2018 WL 3222519, at *5 (S.D.N.Y. July 2, 2018).

PLG's lodestar to date is $33,410.00, and exceeds the one-third contingency fee of $25,406.06. Prior to and following the filing of the Complaint, counsel spent significant time investigating this matter, drafting damage calculations, and engaging in settlement negotiations and discussions, including preparation for and attendance at the mediation before Magistrate Judge Stewart D. Aaron. PLG has used its considerable expertise and experience in litigating wage and hour cases to provide a satisfactory result to Plaintiffs.

A copy of PLG's contemporaneous billing records is enclosed for the Court's review. We reviewed the contemporaneous billing records and removed any and all charges for time spent that could be considered duplicative of another billed task or reduced any time charged that could be considered excessive for the particular task. Based on PLG's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we believe that the hours

Hon. Jesse M. Furman
January 14, 2020
Page 8

reported, compiled from contemporaneous time records maintained by each attorney participating in the case, are reasonable and were necessarily expended on this litigation.

Below is a chart summarizing the specific attorneys, their hourly rates,[2] and their total time worked on this matter:

| Attorney's Name | Position | Hours Billed | Hourly Rate | Fees |
|---|---|---|---|---|
| Louis Pechman | Partner | 8.1 | $600.00 | $4,860.00 |
| Lillian M. Marquez | Associate | 34.1 | $400.00 | $13,640.00 |
| Vivianna Morales | Associate | 42.6 | $350.00 | $14,910.00 |

**TOTAL LODESTAR:  $33,410.00**

Below is a chart summarizing all reasonable expenses that PLG incurred in the prosecution of this matter:

| PLG Expense Incurred & Description | Amount |
|---|---|
| Filing fee in the Southern District of New York. | $400.00 |
| Service of summons and complaint on Defendants, costs of copying costs for pleadings (426 pages at. $0.10 per page) | $192.60 |
| Fedex to Paul Sierros | $16.49 |

**TOTAL COSTS:  $609.09**

For all the foregoing reasons, the parties respectfully request that their settlement agreement be approved and that the Court dismiss the action through entry of the Stipulation and Order of Dismissal with Prejudice.

Respectfully submitted,

Vivianna Morales

cc:  Counsel of Record (via ECF)

Enclosures

---

[2]  These are the regular rates that PLG charges its numerous hourly clients. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections* ("Arbor Hill"), 522 F.3d 182, 190 (2d Cir. 2008) (A "reasonable hourly rate" is the "rate a paying client would be willing to pay.").